# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| This document relates to: Barbara Earnest, 16-17144 | ) ) | |

## ORDER AND REASONS

Before the Court is Plaintiff's Motion to Exclude Expert Testimony that Relies Upon Defendants' Employee Dr. Michael Kopreski (Doc. 6160). The Court heard oral argument on July 25, 2019. For the following reasons, the Motion is **DENIED**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer and other forms of cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more.

The first bellwether trial of Plaintiff Barbara Earnest ("Plaintiff") is set to begin September 16, 2019. In the instant Motion, Plaintiff moves to exclude expert testimony that relies on a certain analysis conducted by Dr. Michael Kopreski. Dr. Kopreski is a former employee of Sanofi who provided deposition

---

[1] Docetaxel is the generic version of Taxotere.

testimony as Sanofi's 30(b)(6) witness. Defendants have not proffered Dr. Kopreski himself as an expert, but several of Sanofi's designated experts rely on Dr. Kopreski's post hoc analysis of alopecia adverse events in the Taxotere clinical study, TAX 316.

TAX 316 was a 1997 Sanofi clinical trial testing the efficacy of Taxotere in the treatment of adjuvant breast cancer. As part of the trial, participants were followed for 10 years after their treatment. During this period, researchers tracked ongoing adverse events, including alopecia. The study, as reported to the FDA, concluded that roughly 4 percent of the participants experienced "ongoing alopecia."

In conjunction with this litigation and in response to a 30(b)(6) deposition notice, Dr. Kopreski performed a re-analysis of the TAX 316 data as it relates to ongoing alopecia. His updated analysis reports that less than 1 percent of patients experienced "persistent alopecia." Three of Defendants' experts—Dr. John Glaspy, Dr. Janet Arrowsmith, and Mr. Justin Victoria—rely on the findings of Dr. Kopreski in the expert opinions they intend to render at trial.

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and

2

> (d) the expert has reliably applied the principles and methods to the facts of the case.[2]

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*[3] and *Kumho Tire Co. v. Carmichael*.[4] The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the requisite qualifications.[5] After defining the permissible scope of the expert's testimony, a court next assesses whether the opinions are reliable and relevant.[6] As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[7]

First, to assess reliability, a court considers whether the reasoning or methodology underlying the expert's testimony is valid.[8] The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[9] Courts should exclude testimony based merely on subjective belief or unsupported speculation.[10] Courts must, however, give proper deference to the traditional adversary system and the role of the jury within that system.[11] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[12] After

---

[2] FED. R. EVID. 702.
[3] 509 U.S. 579 (1993).
[4] 526 U.S. 137 (1999).
[5] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").
[6] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010). *See also* Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881–82 (5th Cir. 2013).
[7] *Wellogix*, 716 F.3d at 881.
[8] *See Daubert*, 509 U.S. at 592–93.
[9] *See* Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998).
[10] *See Daubert*, 509 U.S. at 590.
[11] *See id.* at 596.
[12] *Id.*

3

assessing reliability, a court evaluates relevance.[13] In doing so, a court must determine whether the expert's reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact in understanding the evidence.[14]

Federal Rule of Evidence 703 further provides that an expert may offer opinions based on otherwise inadmissible facts or data but only if (1) they are of the kind reasonably relied upon by experts in the particular field; and (2) the testimony's probative value substantially outweighs its prejudicial effect.[15]

## LAW AND ANALYSIS

Plaintiff argues that Sanofi's experts—specifically, Dr. John Glaspy, Dr. Janet Arrowsmith, and Mr. Justin Victoria—should not be permitted to "parrot" Kopreski's opinion on the TAX 316 study. Plaintiff argues that Dr. Kopreski's re-analysis of the study results was litigation-driven and therefore fundamentally unreliable. Plaintiff takes issue with Sanofi's experts' acceptance of Dr. Kopreski's re-analysis—they note that Dr. Arrowsmith merely reviewed Dr. Kopreski's analysis before accepting it and that Mr. Victoria testified that he does not know what data Dr. Kopreski used or where it came from.[16] Plaintiff compares Dr. Kopreski to a "Trojan horse" whose re-analysis will reach the jury without being subject to cross-examination.

"Federal Rule of Evidence 703 allows experts to base their opinions on facts or data that the expert has been made aware of or personally observed, which includes the efforts of other experts, provided that 'experts in the particular field would reasonably rely on those kinds of facts or data in forming

---

[13] Burst v. Shell Oil Co., 120 F. Supp. 3d 547, 551 (E.D. La. June 9, 2015).
[14] *Id.*
[15] FED. R. EVID. 703.
[16] What is not before this Court is a *Daubert* challenge to Dr. Glaspy, Dr. Arrowsmith, or Mr. Victoria.

an opinion on the subject.'" [17] As the Sixth Circuit has written, "[g]reat liberality is allowed the expert in determining the basis of his opinions." [18] Accordingly, experts are permitted to rely on analyses or studies conducted by others, provided such reliance is reasonable. [19]

Here, Defendants explain that their experts conducted independent reviews of Dr. Kopreski's work. Dr. Arrowsmith, for example, examined patient data for two TAX 316 patients and reached the same conclusions as Dr. Kopreski, leading her to conclude his analysis was reliable. The experts' reliance on Dr. Kopreski's analysis, therefore, passes muster. Further, the Court disagrees with Plaintiff's characterization of Dr. Kopreski as a "Trojan horse." In Greek mythology, the people of Troy had no knowledge of what was inside the horse. Here, Plaintiff is very familiar with the contents of this so-called "Trojan horse." Dr. Kopreski was deposed three times, and the depositions spanned six days and over 25 hours. On cross-examination, Plaintiff can illuminate for the jury that these experts relied on Dr. Kopreski's re-analysis. Plaintiff can ask these experts to explain why such reliance was warranted, and the jury can decide whether to credit the experts' testimony.

---

[17] Tajonera v. Black Elk Energy Offshore Operations, LLC, 2016 WL 3180776, at *10 (E.D. La. June 7, 2016).
[18] Eggert v. Meritain Health, Inc., 428 Fed. App'x 558, 567 (6th Cir. 2011) (quoting Mannino v. Int'l Mfg. Co., 650 F.2d 846, 853 (6th Cir.1981)).
[19] *See Tajonera*, 2016 WL 3180776, at *11 (indicating that an expert witness can rely on another expert if that expert's methodology would be deemed reliable under *Daubert*); Sheats v. Bowen, 318 F. Supp. 640, 644 (D. Del. 1970) ("In order for an expert to base his opinion on a study it is necessary that he be able to testify of his own knowledge as to the nature and extent of the source from which statistics were gathered.") (citing Bogacki v. Am. Machine & Foundry Co., 417 F.2d 400 (3d Cir. 1969)).

5

## CONCLUSION

Accordingly, for the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion to Exclude Expert Testimony that Relies Upon Defendants' Employee Dr. Michael Kopreski (Doc. 6160) is **DENIED.**

New Orleans, Louisiana this 14th day of August, 2019.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE