# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL No. 16-2740 |
| PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | SECTION: "H" (5) |
| | ) | |
| This document relates to: | ) | |
| Elizabeth Kahn, No. 16-17039 | ) | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment Based on the Statute of Limitations (Doc. 9295). The Court held oral argument on the Motion on March 11, 2020. For the following reasons, the Motion is **DENIED**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more.

Plaintiff Elizabeth Kahn was diagnosed with breast cancer in 2008 at the age of 50. As part of her treatment, she participated in a clinical trial involving Taxotere. In May 2008, she began her chemotherapy regimen, which consisted of Taxotere, a drug called Avastin, and several other drugs. She finished with this chemotherapy regimen in October 2008. She testified that

---

[1] Docetaxel is the generic version of Taxotere.

in April 2009, she made her first inquiry with a doctor, her gynecologist, about her persisting hair loss. She further testified that sometime in 2009 or 2010, she asked her oncologist when her hair would fully regrow, and in July 2009, she spoke to her dermatologist about her hair.

Not long after Kahn completed her chemotherapy with Taxotere, she underwent breast surgery to remove a tumor. After surgery, she had "After surgery" treatment, which involved the administration of Avastin. She completed her treatment with Avastin in July 2009.

Kahn filed her lawsuit in December 2017, several years after she completed her cancer treatment and lost her hair. She took action only after she learned of an attorney advertisement in 2016. The ad described the alleged link between Taxotere and permanent hair loss. In the instant Motion, Defendants argue that because Kahn waited years before filing suit, her claims are prescribed.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] When considering a summary judgment motion, the Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.[4]

---

[2] FED. R. CIV. P. 56.
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).

# LAW AND ANALYSIS

Defendants argue that summary judgment is warranted for two reasons: (1) the untimeliness of this case is apparent from the pleadings; and (2) the evidence shows that contra non valentem does not apply. Defendants argue that Plaintiff was aware of her alleged injury six months after she completed chemotherapy and that this is when prescription began to run. Defendants point to the Master Complaint in the MDL, defining permanent chemotherapy-induced alopecia ("PCIA") as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."[5] Highlighting the fact that in her Short Form Complaint, Kahn incorporated the Master Complaint by reference, Defendants aver that the prescriptive period began to run six months after Kahn completed chemotherapy. Defendants posit that Kahn completed her breast cancer treatment in July 2009 and that the one-year prescription period began to run in January 2010. According to Defendants, when Kahn filed her complaint in December 2017, her case had prescribed.

Defendants also argue that contra non valentem does not apply because Plaintiff failed to investigate her claim. They note that although Kahn talked to her oncologist, Dr. Zoe Larned, about her hair thinning, she never asked him about the cause of it. Defendants argue that a Plaintiff should not be able to toll prescription simply because she told her doctor about changes in her hair. Defendants further argue that any conversations Kahn had with doctors during her chemotherapy treatment, before her injury was realized, should not serve to toll prescription. Kahn testified that around April 2009 she asked her gynecologist, Dr. Margaret Roberie, about her hair thinning. Dr. Roberie told Kahn that her age could be causing her hair loss. Defendants aver, however,

---

[5] Doc. 9295-13.

that this inquiry has no bearing on the contra non valentem analysis because Kahn's injury had not yet manifested itself. According to Defendants, Plaintiff Kahn has not shown reliance as required by contra non valentem.

In response, Plaintiff first argues that she had no actual or constructive knowledge of her injury until she learned of the attorney ad in 2016. She avers that she reasonably believed her hair would return because she was told her hair loss would be temporary.

Plaintiff argues that even if she had knowledge of her injury before 2016, contra non valentem tolls the prescription period. She avers that she made three inquiries to her physicians about her hair loss. She disputes that she spoke to her gynecologist *during* her treatment and says that this conversation occurred *after* her treatment with Taxotere. She explains that she finished her chemotherapy with Taxotere in October 2008. After this, she underwent breast surgery and "After surgery" treatment. The "After surgery" treatment involved the administration of a drug called Avastin which is not chemotherapy and is not associated with hair loss. Her treatment with Avastin concluded in July 2009. According to Plaintiff, her injury was realized six months after her treatment with Taxotere, not six months after her "After surgery" treatment as Defendants suggest. Thus, Plaintiff argues that when she spoke to her gynecologist in April 2009, this was after her injury was realized.

Kahn avers that in addition to inquiring with her gynecologist, she inquired with her oncologist, Dr. Larned, who was unable to provide her with a specific timeline for when her hair would regrow. Lastly, Kahn avers that in July 2009, a dermatologist advised her to take Biotin to encourage faster hair

regrowth. Kahn avers that in light of these inquiries, she reasonably believed her hair would grow back until she learned of the attorney ad in 2016.

Under Louisiana Civil Code article 3492, the prescriptive period for products liability claims is one year.[6] Generally, the period begins to run from the day the injury or damage is sustained.[7] "If the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the burden of establishing that suspension, interruption or renunciation of prescription has occurred."[8]

The doctrine of contra non valentem "provides some grace for those plaintiffs who are unaware that their injury was caused by a tort."[9] The doctrine states that prescription begins to run when a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[10] This occurs "when the plaintiff has actual or constructive knowledge of a causal relationship between the object or product and the injury."[11] "There is no requirement that a patient be informed by an attorney or physician of a possible [claim] before prescription begins to run."[12] Rather, prescription begins to run "when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim."[13] Accordingly, to toll prescription, a plaintiff who suspects that something is wrong must act reasonably to discover the

---

[6] La. Civ. Code art. 3492. *See also In re:* Xarelto (Rivaroxaban) Prods. Liab. Litig., 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017).

[7] Carter v. Matrixx Initiatives, Inc., 391 F. App'x 343, 344 (5th Cir. 2010).

[8] Hoerner v. Wesley-Jensen, 684 So. 2d 508 (La. App. 4 Cir. 1996).

[9] *Xarelto*, 2017 WL 4517287, at *2.

[10] *Id.* (quoting Bailey v. Khoury, 891 So.2d 1268, 1276 (La. 2005)) (internal quotations omitted).

[11] *Id.*

[12] *Id.* (quoting Breaux v. Danek Med., No. 95-1730, 1999 WL 64929, at *6 (E.D. La. Feb. 4, 1999)) (internal quotations omitted).

[13] Luckett v. Delta Airlines, Inc., 171 F.3d 295, 300 (5th Cir. 1999).

Case 8:23-cv-00782-MV   Document 6-48   Filed 05/22/23   Page 6 of 8

cause of the problem; otherwise, contra non valentem will not apply.[14] "The ultimate issue is the reasonableness of the [plaintiff's] action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct."[15]

This Court agrees with Defendants that Plaintiff's case is prescribed on the face of the pleadings. Plaintiff identifies her injury as PCIA. In her Short Form Complaint, she incorporates the Master Complaint, which defines PCIA as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."[16] Kahn completed her Taxotere treatment in October 2008, which means that the one-year prescriptive period began in April 2009 and ended in April 2010.[17] On the face of the pleadings, when Kahn filed her complaint in December 2017, her case had prescribed. Even setting aside the definition of PCIA in the Master Complaint, Kahn knew or should have known six months after her treatment that something was amiss when her hair had not grown back as she expected.

Based on the evidence, however, the Court finds that there is an issue of fact on whether Plaintiff acted reasonably to discover the cause of her hair loss. In a prior ruling, this Court discussed the case of *Hoerner v. Wesley-Jensen*.[18] In *Hoerner*, the plaintiff's doctor told her that her eye infection was likely from a "bug" she caught.[19] However, some time later, the plaintiff read an article saying that extended-wear contacts present a significant risk of eye

---

[14] *See* Chevron USA, Inc. v. Aker Mar., Inc., 604 F.3d 888, 894 (5th Cir. 2010).
[15] Campo v. Correa, 828 So. 2d 502, 511 (La. 2002).
[16] Doc. 4407.
[17] The Court finds that Plaintiff's injury was realized six months after taking Taxotere, not six months after she finished her "After surgery" treatment as Defendants suggest.
[18] *Hoerner*, 684 So. 2d 508.
[19] *Id*. at 514.

infections.[20] The plaintiff filed suit weeks after reading the article.[21] The *Hoerner* court found that the plaintiff was reasonable in relying on what her doctor told her until she learned otherwise.[22] Applying contra non valentem, the court deemed her inaction reasonable:

> Not until Mrs. Hoerner read in the popular press in 1989 that users of extended-wear contact lenses were more likely to contract eye infections than those using daily-wear lenses did she suspect that she had been injured by another's conduct, rather than by a "bug" to which anyone could have been exposed.[23]

Because the *Hoerner* plaintiff conducted an investigation and reasonably relied on what she learned in her investigation, prescription was tolled.

Like the *Hoerner* plaintiff, Plaintiff Kahn may have had reason to believe that something other than Defendants' conduct caused her injury. Dr. Roberie, for example, told Kahn that her hair loss may be due to her age. Kahn testified as follows:

> Q: Have you ever asked any health care provider why they thought your hair is thinner than it was before chemotherapy?
>
> A: I talked once to my gynecologist, and her comments were back -- her comment to me was, Well, as you age, your hair gets thinner.
>
> Q: And which gynecologist was this?
>
> A: Dr. Roberie.
>
> Q: So have you considered whether the current condition of your hair is affected by the aging process?

---

[20] *Id.* at 509.
[21] *Id.* at 508.
[22] *Id.* at 514.
[23] *Id.* at 514.

A:    I was 50 at the time, and most 50-year-old's hair
do not thin. You know, 80, maybe, but not 50. So
when she told me that, I was a little taken
aback, but -- so I dropped it.[24]

Based on the evidence, the Court finds that there is an issue of fact on whether contra non valentem applies to toll prescription for Plaintiff. A jury will have to consider whether Plaintiff was reasonable in relying on such statements from her doctors and whether Plaintiff was reasonable in failing to attribute her injury to Taxotere until she learned of the attorney advertisement years after she sustained her injury. Accordingly, the Court denies Defendants' Motion.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Motion for Summary Judgment Based on the Statute of Limitations (Doc. 9295) is **DENIED**.

New Orleans, Louisiana this 7th day of April, 2020.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

---

[24] Doc. 9418-17 (Ex. P) (pp. 257–58 of deposition).

8