# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| **This document relates to:** Sheila Crayton, 17-5923 | ) ) ) | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment on the Claims of Sheila Crayton (Doc. 10821). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second is set for May 24, 2021.[2]

In anticipation of the second bellwether trial, the Court selected Plaintiff Sheila Crayton, among others, to proceed with the first phase of discovery.[3] During that time, Defendant Sanofi deposed Crayton and three additional fact

---

[1] Docetaxel is the generic version of Taxotere.
[2] The second trial was continued due to the COVID-19 pandemic.
[3] Doc. 1099 (Case Management Order ("CMO") 8A).

witnesses.[4] On January 29, 2019, the Court selected Plaintiff Crayton to proceed to the second phase of discovery as an alternate plaintiff for the second bellwether trial.[5] Shortly after this, on March 22, 2019, the Plaintiffs' Steering Committee (the "PSC") filed a Motion to Remove Sheila Crayton from the Second Bellwether Trial Pool.[6] The Court denied the motion.[7]

On November 18, 2019, the Court met with Plaintiff Sheila Crayton, her counsel, and others, including defense counsel.[8] Weeks later, the Court issued an order stating that "while Ms. Crayton appeared lucid and able to converse, she showed significant physical limitations and appeared to lack the stamina necessary to serve as a bellwether plaintiff in a 10-day trial."[9] The Court ordered that Crayton would no longer serve as the alternate plaintiff for the second bellwether trial. The Court wrote, however, that because "discovery has been completed, the Court will entertain dispositive motions in her case."[10]

In the instant Motion, Defendant Sanofi argues that Crayton has failed to produce evidence of causation and that Sanofi, therefore, is entitled to summary judgment on her claims. Sanofi further seeks payment of its costs and attorneys' fees from the PSC. Plaintiff opposes the Motion.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[4] *See* Doc. 1168 (CMO 10) (providing that in the first phase of discovery, Defendants may depose Plaintiff and three additional witnesses).
[5] Doc. 6017 (CMO 16).
[6] Doc. 6559.
[7] Doc. 6935.
[8] Doc. 8591.
[9] Doc. 8701.
[10] *Id.*

2

law."[11] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[12] When considering a summary judgment motion, the Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.[13]

## LAW AND ANALYSIS

Sanofi argues that Crayton has no evidence showing that she has Permanent Chemotherapy Induced Alopecia ("PCIA") and that Taxotere caused it. Sanofi argues that without such evidence, Crayton cannot prove an essential element of her claims. Sanofi notes that the PSC's expert dermatologist, Dr. Antonella Tosti, diagnosed the first three selected bellwether Plaintiffs in this MDL with PCIA, but not Plaintiff Crayton.

In response, Plaintiff Crayton avers that when the Court removed her from the trial pool, Plaintiff had no obligation to produce an expert report. Plaintiff states that she is "now merely one of 12,000 plaintiffs" in this MDL.[14] Lastly, Plaintiff cites *Housley v. Cerise* and states that the Louisiana Supreme Court has held that a plaintiff's injury is presumed to have resulted from an accident if the injured person was in good health before the accident but developed symptoms of the injury after the accident.[15] Plaintiff avers that because she has alleged that she did not have permanent alopecia prior to her chemotherapy, this should be sufficient to defeat summary judgment.

---

[11] FED. R. CIV. P. 56.
[12] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[13] Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).
[14] Doc. 10909 at 5.
[15] *Id.* at 6–7 (citing Housley v. Cerise, 579 So. 2d 973 (La. 1991)).

3

In a negligence action, the plaintiff has the burden of proving "every essential element of his case, including the cause-in-fact of damage."[16] "Under Louisiana law, 'expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge.'"[17] As Defendants note, Dr. Tosti testified that PCIA "can look similarly clinically to other types of alopecia" and that "a doctor should make the diagnosis."[18]

Because Plaintiff has submitted no evidence of causation, the Court finds that summary judgment is appropriate. The Court rejects Plaintiff's argument that because she was removed from the trial pool, her case is not ripe for summary judgment motion practice. The Court did not remove Crayton from the trial pool until after discovery had been completed, and when the Court did remove her, the Court explicitly noted that it would still entertain dispositive motions in her case. Indeed, the Court similarly entertained dispositive motions regarding Plaintiff Antoinette Durden, for example, after removing her from the trial pool. The PSC should not be surprised by Sanofi's Motion.

Plaintiff avers that Crayton "does not want to be singled out for special treatment and forced to produce an expert report at this perilous time of Covid-19 outbreak."[19] However, the deadline to submit her expert report was in October 2019, months before the COVID-19 outbreak. The Court notes, too, that whether Crayton wishes to be singled out is irrelevant. As the Fifth Circuit has noted in the MDL context, "[a]ny individual case may be selected as a bellwether, and no plaintiff has the right to avoid the obligation to proceed with [her] own suit, if so selected."[20] When Crayton was selected, she had an

---

[16] Lasha v. Olin Corp., 625 So. 2d 1002, 1005 (La. 1993).
[17] Burst v. Shell Oil Co., Civil Action No. 14–109, 2014 WL 3893304, at *2 (E.D. La. Aug. 8, 2014).
[18] Doc. 10821-6 at 4.
[19] Doc. 10909 at 6.
[20] In re FEMA Trailer Formaldahyde Prods. Liab. Litig., 628 F.3d 157, 163 (5th Cir. 2010).

obligation to move her case forward, and this obligation continued until the Court removed her from the trial pool in December 2019.

In her brief, Plaintiff emphasizes that she is "frail" as well as "physically and mentally challenged."[21] Plaintiff fails to demonstrate, however, that her frailty would have prevented her from sitting for a scalp biopsy so that Dr. Tosti could assess her condition. Further, to the extent Plaintiff relies on the *Housley* case for a presumption that she suffers from PCIA due to Taxotere, the Court rejects this. Setting aside the issue of whether *Housley* applies at the summary judgment stage, the Court has reviewed the "before" and "after" photographs that Crayton submitted for this MDL; the Court finds that expert testimony would be required to establish whether Crayton suffers from PCIA, given that her post-chemotherapy photo does not show significant chemotherapy-induced hair loss, if any at all.[22]

Because Crayton has failed to come forward with expert evidence creating an issue of fact on causation, the Court finds that Sanofi is entitled to summary judgment on her claims.[23] The Court, however, will not award Sanofi costs and attorneys' fees. Sanofi emphasizes that the PSC did not timely notify Sanofi that it would not pursue a diagnosis for Crayton. When the PSC did not submit an expert report by its October 2019 deadline, Sanofi should have been on notice that the PSC was not pursuing a diagnosis. Sanofi could have stopped its work on the case, although the Court imagines that Sanofi strategically chose to continue its work on the case so that it could file the instant Motion.

---

[21] Doc. 10909 at 6.
[22] Doc. 10808-8 at 3.
[23] *See* Stewart v. Capital Safety USA, 867 F.3d 517, 522 (5th Cir. 2017) (affirming summary judgment for defendants where plaintiff did "not proffer[] any competent expert testimony on causation.").

5

## **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment on the Claims of Sheila Crayton (Doc. 10821) is **GRANTED** insofar as Sanofi moves for dismissal of her case. Accordingly, her case is **DISMISSED WITH PREJUDICE**. To the extent Sanofi seeks costs and attorneys' fees, the Motion is **DENIED**.

New Orleans, Louisiana, this 13th day of January, 2021.

_____
JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE