UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| This document relates to: Elizabeth Kahn, 16-17039 | ) ) ) | |

## ORDER AND REASONS

Before the Court is Plaintiff's Motion to Exclude Testimony of Dr. Mamina Turegano (Doc. 11357). The Court held oral argument on the Motion on December 14, 2020. For the following reasons, the Motion is **DENIED.**

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi" or "Defendants"). Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second trial is set for 2021.[2]

In the instant Motion, Plaintiff Elizabeth Kahn, the second bellwether plaintiff, moves to exclude the testimony of Dr. Mamina Turegano. Dr.

---

[1] Docetaxel is the generic version of Taxotere.
[2] The second trial was continued due to the COVID-19 pandemic.

Turegano is a dermatopathologist, and Sanofi intends to call her as an expert witness at trial. Sanofi opposes Plaintiff's Motion.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[3]

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*[4] and *Kumho Tire Co. v. Carmichael.*[5] The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the requisite qualifications.[6] After defining the permissible scope of the expert's testimony, a court next assesses whether the opinions are reliable and relevant.[7] As the

---

[3] FED. R. EVID. 702.
[4] 509 U.S. 579 (1993).
[5] 526 U.S. 137 (1999).
[6] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011). *See also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").
[7] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010). *See also* Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881–82 (5th Cir. 2013).

"gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[8]

First, to assess reliability, a court considers whether the reasoning or methodology underlying the expert's testimony is valid.[9] The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[10] Courts should exclude testimony based merely on subjective belief or unsupported speculation.[11] Courts must, however, give proper deference to the traditional adversary system and the role of the jury within that system.[12] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[13] After assessing reliability, a court evaluates relevance.[14] In doing so, a court must determine whether the expert's reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact in understanding the evidence.[15]

Federal Rule of Evidence 703 further provides that an expert may offer opinions based on otherwise inadmissible facts or data but only if (1) they are of the kind reasonably relied upon by experts in the particular field; and (2) the testimony's probative value substantially outweighs its prejudicial effect.[16]

## LAW AND ANALYSIS

In her Motion, Plaintiff argues that the Court should not allow Dr. Turegano to offer a general causation opinion because she is not a

---

[8] *Wellogix*, 716 F.3d at 881.
[9] *See Daubert*, 509 U.S. at 592–93.
[10] *See* Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998).
[11] *See Daubert*, 509 U.S. at 590.
[12] *See id.* at 596.
[13] *Id.*
[14] Burst v. Shell Oil Co., 120 F. Supp. 3d 547, 551 (E.D. La. June 9, 2015).
[15] *Id.*
[16] FED. R. EVID. 703.

biostatistician or statistician, has not conducted a Bradford Hill analysis, and employs no methodology to support a general causation opinion. Plaintiff further argues that Dr. Turegano did not adequately disclose her opinions in her report. In response, Sanofi avers that Dr. Turegano is not opining on general causation, only specific causation, and Sanofi argues that Dr. Turegano adequately set forth her opinions in her report.

I. Dr. Turegano's Causation Opinions

Plaintiff argues that before offering a specific causation opinion, Dr. Turegano must provide "the same level of general causation support (either herself or in reliance on some other expert) to make a specific causation conclusion that Plaintiff's experts are required to meet."[17] In other words, Plaintiff states, "what's good for the goose is good for the gander."[18] In response, Sanofi argues that the burden to prove both general and specific causation lies solely with Plaintiff, not Sanofi.

As this Court has held in prior rulings, Plaintiff Kahn bears the burden of proving that Taxotere caused her injury, and she must prove both general and specific causation.[19] Plaintiff Kahn has not pointed to any law providing that a defendant must prove general causation before testifying about possible alternative causes of a plaintiff's injury, and this Court has found no such law. Dr. Turegano, therefore, need not conduct a general causation analysis—

---

[17] Doc. 11502 at 2.
[18] *Id.*
[19] *See* Doc. 11780 (Order and Reasons on Motion to Exclude Testimony of John Glaspy, M.D.). As this Court has explained, "[g]eneral causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." Doc. 8094 at 5 (quoting Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 351 (5th Cir. 2007)). To assess whether general causation exists between an agent and a disease, the case law recognizes a two-prong test. *Id.* First, there must be evidence showing a "statistically significant association" between the agent and the disease. *Id.* Second, once an association is found, researchers assess whether a true causal relationship underlies the association. *Id.* Typically, an expert applies the Bradford Hill criteria to evaluate this second prong. *Id.*

4

pointing to evidence of a statistically significant association and assessing the Bradford Hill factors—before offering an opinion on the specific cause of Plaintiff Kahn's hair loss.

## II. Dr. Turegano's Disclosures

Next, Plaintiff argues that Dr. Turegano did not properly disclose her opinions as required under Federal Rule of Civil Procedure 26(a)(2)(B). Plaintiff argues that Dr. Turegano does not provide an opinion in her report as to whether she considered or ruled out Taxotere-containing regimens as a cause of Plaintiff Kahn's alleged permanent hair loss. Plaintiff further avers that Dr. Turegano failed to use a reliable methodology. Sanofi squarely disputes Plaintiff's arguments.

Contrary to what Plaintiff states, Dr. Turegano does opine that she ruled out Taxotere. She writes as follows: "[I]t is my opinion to a reasonable degree of medical probability that Taxotere did not cause Ms. Kahn's alopecia and that she has a progressive form of alopecia, which is consistent with androgenetic alopecia."[20] While Plaintiff points to deposition testimony from Dr. Turegano, where Dr. Turegano is repeatedly asked about the cause of Plaintiff's "PCIA" (permanent chemotherapy-induced alopecia), Dr. Turegano makes clear in her report that she does not attribute Plaintiff's hair loss to her chemotherapy at all. She notes that Plaintiff's hair loss began before her chemotherapy treatment and plainly states that "Ms. Kahn's chemotherapy did not contribute to her alopecia."[21] The Court, then, is not persuaded by the deposition testimony Plaintiff highlights.

The Court further finds that Dr. Turegano has employed a reliable methodology, and this is adequately set forth in her report. She explains that

---

[20] Doc. 11418-1 at 15.
[21] *Id.* at 26.

5

she conducted a literature review, she examined Kahn, and she considered Kahn's medical records. She also appears to have conducted a differential diagnosis, although the Court finds that this analysis is less than clear. While she explains the different types of alopecia and then explains why Kahn's alopecia is consistent with androgenetic alopecia, she does not explicitly rule out the other forms of alopecia she discussed. Her report, however, complies with Rule 26. She provided a complete statement of her opinions, the reasons for them, and the facts and data she considered. To the extent she failed to spell out the steps of her differential diagnosis, Plaintiff had the opportunity to explore this at her deposition and can do so again at trial.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude Testimony of Dr. Mamina Turegano (Doc. 11357) is **DENIED.**

New Orleans, Louisiana, this 12th day of February, 2021.

_____
JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE