UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL No. 16-2740 |
| PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | SECTION: "H" (5) |
| | ) | |
| **This document relates to:** | ) | |
| Elizabeth Kahn, 16-17039 | ) | |

# ORDER AND REASONS

Before the Court is a Motion for Reconsideration on Statute of Limitations (Doc. 12542). On May 26, 2021, the Court held oral argument on the Motion. For the following reasons, the Motion is **DENIED.**

# BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi" or "Defendants"). Plaintiffs allege that the drug caused permanent alopecia, or permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second is set for August 23, 2021.[2]

Plaintiff Elizabeth Kahn is the designated plaintiff for the second bellwether trial. In its Order and Reasons dated April 7, 2020 (Doc. 9885), the

---
[1] Docetaxel is the generic version of Taxotere.
[2] The second trial was continued due to the COVID-19 pandemic.

Court denied Sanofi's Motion for Summary Judgment Based on the Statute of Limitations as to Kahn. Although the Court found that Kahn's claims were facially prescribed, the Court held that there was an issue of fact on whether contra non valentem applies to toll prescription. The Court identified evidence showing that Kahn investigated her injury—she asked her gynecologist why her hair was thinner, and her gynecologist attributed it to Kahn's age. The Court ruled that the jury must consider whether Kahn was reasonable in relying on such statements from her doctors and failing to attribute her injury to Taxotere until seeing an attorney advertisement.

In the instant Motion, Sanofi now asks the Court to reconsider its Order based on a recent Fifth Circuit decision, *In re Taxotere (Docetaxel) Products Liability Litigation*, relating to Plaintiffs Cynthia Thibodeaux, Deborah Johnson, and Tanya Francis (hereinafter, the "Thibodeaux" case).[3] Plaintiff Kahn opposes Sanofi's Motion.

## **LEGAL STANDARD**

A motion to reconsider an interlocutory order is governed by Federal Rule of Civil Procedure 54(b), which states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an

---

[3] 995 F.3d 384 (5th Cir. 2021).

intervening change in or clarification of the substantive law.'"[4] "'[T]he power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration governing final orders.'"[5]

## LAW AND ANALYSIS

As an initial matter, Sanofi does not ask the Court to reconsider its ruling that Kahn's claims are facially prescribed. Sanofi acknowledges that this holding is in accord with the recent *Thibodeaux* decision. Sanofi argues only that this Court erred in finding an issue of fact on contra non valentem. Specifically, Sanofi argues that Kahn failed to reasonably investigate her injury and that if she had, she would have uncovered information linking Taxotere to permanent alopecia.

The Court finds no reason to reverse its original decision. As the Fifth Circuit has explained, "[u]nder Louisiana law, there is a firmly rooted equitable-tolling doctrine known as *contra non valentem agree non currit praescriptio*, which means '[n]o prescription runs against a person unable to bring an action."[6] Contra non valentem, as it is known, tolls prescription in four exceptional circumstances:

> (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action;

---

[4] Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir. 2017) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)).
[5] *Id.* (quoting Saint Annes Dev. Co. v. Trabich, 443 F. App'x 829, 831–32 (4th Cir. 2011)).
[6] *Thibodeaux*, 995 F.3d at 390 (quoting R.J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776, 786 (5th Cir. 1963)).

3

> (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[7]

In its original Order, the Court found that under the fourth category, known as the "discovery rule," the evidence in this case creates an issue of fact for the jury to decide.

Under the discovery rule, a plaintiff's ignorance about her claim cannot be willful nor can it be the result of negligence.[8] If she has constructive notice, or "notice enough to excite attention and put [her] on [her] guard and call for inquiry," this is sufficient to start the running of prescription.[9] Once she has this notice, a plaintiff has "an obligation to further investigate the facts in order to pursue [her] claim before the one-year prescriptive period lapses."[10]

According to the Fifth Circuit, "Plaintiffs are not entitled to wait to sue until they are certain of what and/or who caused their injury."[11] Contra non valentem tolls the prescription period only "until the point when a prospective plaintiff through the exercise of reasonable diligence should have 'considered [Taxotere] [or docetaxel] as a potential root cause of' her injury."[12]

In *Thibodeaux*, the Fifth Circuit wrote that "[a] reasonable inquiry into the cause of one's persistent hair loss would likely include consultation with doctors,"[13] and indeed, Plaintiff Kahn consulted with a doctor. Kahn spoke to

---

[7] *Id.* (quoting Morgan v. Entergy New Orleans, Inc., 234 So. 3d 113, 116, 120 (La. Ct. App. 2017)).
[8] *Id.* at 391.
[9] *Id.* (quoting Cartwright v. Chrysler Corp., 255 La. 597, 232 So. 2d 285, 287 (1970)).
[10] *See id.* (quoting Rozas v. Dep't of Health & Hum. Res., 522 So. 2d 1195, 1197 (La. Ct. App. 1988)) (cleaned up).
[11] *Id.* at 392.
[12] *Id.* at 392–93 (quoting Oil Ins. Ltd. v. Dow Chem. Co., 977 So. 2d 18, 23 (La. Ct. App. 2007)).
[13] *Id.* at 393.

4

her gynecologist, Dr. Marjorie Roberie, on April 9, 2009, about why her hair had become thinner after chemotherapy. Dr. Roberie told Kahn that her hair thinning may be due to her age. This is sufficient to create an issue of fact on contra non valentem.[14]

Sanofi avers that this conversation occurred before Kahn's injury was realized and that for this reason, it is not relevant to the contra non valentem analysis. Citing the Master Complaint, Sanofi argues that Kahn's hair loss could not be classified as permanent until six months after she completed chemotherapy. According to Sanofi, because Kahn completed chemotherapy on October 23, 2008, Kahn inquired with Dr. Roberie roughly two weeks before her hair loss could be considered permanent.

The Court rejects this argument. The fact that Kahn inquired with Dr. Roberie after only five and a half months of hair loss rather than six does not make her inquiry irrelevant. She may have made this inquiry at "the earliest possible indication that [she] may have suffered some wrong," even though this was before the prescription period commenced.[15] A jury, then, must decide how much weight to give this evidence, and a jury may find that Kahn acted reasonably in quickly identifying her developing injury and raising an early inquiry with Dr. Roberie.

Sanofi further argues that had Kahn conducted her own research, she would have discovered information linking Taxotere to permanent hair loss

---

[14] *See* Hoerner v. Wesley-Jensen, 684 So.2d 508, 514 (La. App. 4 Cir. 1996). In *Hoerner*, the plaintiff's doctor told her that her eye infection was likely from a "bug" she caught. *See id.* However, some time later, the plaintiff read an article saying that extended-wear contacts present a significant risk of eye infections. *Id.* at 509. The plaintiff filed suit weeks after reading the article. *Id.* at 508. The *Hoerner* court found that the plaintiff was reasonable in relying on what her doctor told her until she learned otherwise. *Id.*

[15] *See* Labbe Serv. Garage Inc. v. LBM Distributors, Inc., 650 So.2d 824, 829–30 (La. App. 3 Cir. 1995) (finding summary judgment inappropriate where plaintiff's level of knowledge regarding injury was in dispute).

5

before 2016.[16] Indeed, in *Thibodeaux*, the Fifth Circuit noted that, per the Master Complaint, certain information existed that Plaintiffs in this MDL could have uncovered. In 2006, former Taxotere patients formed a group known as "Taxotears," and they developed an online presence.[17] In 2010, a Canadian newspaper and CBS News both published online articles linking Taxotere and permanent hair loss.[18] In addition to this, there was medical literature available linking Taxotere and docetaxel to permanent hair loss.[19]

In the *Thibodeaux* case, however, the three Plaintiffs at issue had performed no investigation into their injury—ongoing hair loss. None sought the assistance of their physicians or did research.[20] The court, then, had to speculate as to "what a reasonable inquiry would have uncovered."[21] The Plaintiffs argued on appeal that "they lacked the 'baseline knowledge' to excite their attention that they might be victims of a tort," and this argument stemmed from the principle that "mere availability of information somewhere, such as on the internet, is not enough; consideration must be given to the plaintiff's 'education, intelligence, and the nature of the defendant's conduct.'"[22] In rejecting this argument, the Fifth Circuit wrote that even considering the plaintiffs' education and intelligence, "the medical literature

---

[16] As explained in the Court's original Order, Kahn saw an attorney advertisement in 2016 describing the alleged link between Taxotere and permanent hair loss. This is what prompted Kahn to take action and ultimately file her lawsuit in December 2017. *See* Doc. 9885.
[17] *Thibodeaux*, 995 F. 3d at 393.
[18] *Id.*
[19] In 2006, Dr. Scot Sedlacek disseminated his research on persistent alopecia and docetaxel. *See id.* at 393–94. In 2009 and 2011, articles were published in the British Journal of Dermatopathology and the American Journal of Dermatopathology, respectively. *Id.* On May 9, 2012, an article was published in the Annals of Oncology. Doc. 4407 at 31–32. These three articles linked permanent hair loss with breast cancer patients who received docetaxel chemotherapy. *See id.* at 30–32.
[20] *Thibodeaux*, 995 F. 3d, at 393 ("None of the Appellants inquired with her doctor into the cause of the persistence of hair loss.").
[21] *Id.*
[22] *Id.* at 392.

6

linking Taxotere to permanent hair loss is relevant insofar as [the Plaintiffs'] reasonable inquiry would have uncovered it."[23]

Here, however, Plaintiff Kahn did investigate her injury—she consulted with a doctor and was told her age was causing her hair loss. This Court, then, need not speculate and will not automatically charge Kahn with knowledge of the information available on the internet, as the Fifth Circuit did for the *Thibodeaux* Plaintiffs. A jury will need to consider whether Plaintiff Kahn's investigation was reasonable or whether Kahn, despite what Dr. Roberie told her, should have conducted her own research at some point before 2016. A jury will need to assess whether Plaintiff, as part of reasonable diligence, should have found the information available online and brought it to her doctors.[24] For these reasons, the Court declines to reverse its original Order.

## CONCLUSION

Accordingly, for the foregoing reasons, Sanofi's Motion for Reconsideration on Statute of Limitations (Doc. 12542) is **DENIED**.

New Orleans, Louisiana this 4th day of June, 2021.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

---

[23] *Id.* at 393.
[24] *See id.*

7